# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Jessica M.,
**Petitioner Below, Petitioner**

**vs) No. 17-1142** ( Ohio County 10-C-406)

**J.D. Sallaz, Superintendent,**
**Lakin Correctional Center,**
**Respondent Below, Respondent**

**FILED**

**June 7, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jessica M., by counsel Tanya Hunt Handley, appeals the November 29, 2017, order of the Circuit Court of Ohio County denying her petition for writ of habeas corpus.[1] Respondent J.D. Sallaz, Superintendent, Lakin Correctional Center, by counsel Elizabeth Davis Grant, filed a summary response in support of the circuit court's order.[2] Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2008, petitioner was convicted of one count of conspiracy, three counts of first-degree sexual assault, four counts of sexual abuse by a parent or guardian, and three counts of incest. As a result, she was sentenced to not less than 101 years and not more than 235 years in prison. This Court affirmed petitioner's convictions following her direct appeal in *State v. Jessica Jane M.*, 226 W. Va. 242, 700 S.E.2d 302 (2010).[3]

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] Effective July 1, 2018, the positions formerly designated as "wardens" are now "superintendents." *See* W.Va. Code § 15A-5-3.

[3] In her direct appeal, petitioner argued that the circuit court erred in permitting the introduction of hearsay statements; in applying the rape shield law; in denying her counsel's request to inquire as to the alleged victim's competency to testify at trial; and in denying her motion to disqualify the prosecuting attorney's office.

On November 19, 2010, petitioner filed a petition for writ of habeas corpus.[4] Counsel was appointed for petitioner and, on December 27, 2013, an amended petition for writ of habeas corpus was filed on petitioner's behalf.[5] On July 11, 2016, petitioner filed a supplemental amended petition for writ of habeas corpus, to which respondent responded.[6] The circuit court held a hearing on petitioner's supplemental amended petition on July 3, 2017. By order entered November 29, 2017, the circuit court denied petitioner's requested relief finding that petitioner failed to provide sufficient evidence to support her claims. It is from the circuit court's November 29, 2017, order that petitioner now appeals.

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex. rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner asserts three assignments of error. First, petitioner argues that she received ineffective assistance of trial counsel. Second, petitioner contends that she was deprived of a fair trial based upon respondent's use of allegedly "false evidence." Third, petitioner argues that the circuit court erred in failing to grant her motion to disqualify the prosecuting attorney's office. Our review of the record supports the circuit court's decision to deny petitioner's petition for writ of habeas corpus as to each of the asserted assignments of error. We will address each alleged error in turn.

In her first assignment of error, petitioner argues that she is entitled to habeas relief, as her trial counsel was ineffective. Generally, as to ineffective assistance of counsel claims, this Court has held that such claims are governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984), adopted by this Court in Syllabus Point 5 of *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995):

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*,

---

[4] In her initial petition for writ of habeas corpus, petitioner alleged improper introduction of hearsay statements, failure to disqualify the prosecuting attorney's office, rape shield law violations, and competency of the child witness.

[5] In her amended petition for writ of habeas corpus, petitioner alleged ineffective assistance of counsel.

[6] In her supplemental amended petition for writ of habeas corpus, petitioner alleged ineffective assistance of counsel and asserted the State's use of perjured or false testimony at trial.

2

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

In discussing claims of ineffective assistance of counsel, this Court has held that "[o]ne who charges on appeal that his trial counsel was ineffective and that such resulted in his conviction must prove the allegation by a preponderance of the evidence." Syl. Pt. 4, *State ex rel Kitchen v. Painter*, 226 W. Va. 278, 700 S.E.2d 489 (2010) (citing Syl. Pt. 22, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974)). We have further ruled that in reviewing counsel's performance, courts must determine whether "the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions." *Miller*, 194 W. Va. at 6, 459 S.E.2d at 117, syl. pt. 6, in part.

Here, petitioner contends that her trial counsel's assistance was ineffective in four respects and argues that such ineffective counsel resulted in her conviction. First, petitioner alleges that her counsel's action in asking the victim, petitioner's then nine-year-old daughter, at trial, "[h]ow many different men did you have sex with?" was ineffective, shocking, and unreasonable.[7] On direct appeal, petitioner argued that the circuit court erred in applying rape shield law to prohibit petitioner's counsel from asking the victim with how many men had she had sex. In *Jessica Jane M.*, this Court determined that petitioner failed to make the proper evidentiary presentation prior to asking such questions, as mandated in *State v. Quinn*, 200 W. Va. 432, 490 S.E.2d 34 (1997), and found no error. *See Jessica Jane M.,* 226 W.Va. at 254, 700 S.E.2d at 314.

Petitioner now argues that her counsel's failure to follow the procedures outlined in *Quinn* fell "well short of the" objective standard of reasonableness and that, but for her counsel's unprofessional errors, the result of the proceedings would have been different. We disagree. We are not persuaded that the actions or inactions of petitioner's trial counsel with regard to his questioning of the victim changed the results of the proceedings. Here, as the circuit court noted in its order denying petitioner's amended supplemental petition for writ of habeas corpus, petitioner was not prejudiced as her counsel was "permitted to ask questions about other false accusations [reportedly made by the victim] to other witnesses and to speak about the [victim's allegedly false statements] in his opening and closing."

Thus, we find that petitioner did not establish, by a preponderance of evidence, that her trial counsel was ineffective or that such ineffective assistance resulted in her conviction, as required by *Miller*. Rather, the evidence presented against her at trial overwhelmingly established petitioner's depraved sexual abuse of her young daughter. Such evidence included the compelling testimony of the young victim who recalled that "her mother held her down while [the mother's] boyfriend had raped" her and that petitioner "put her fingers inside of the victim's vagina, made the victim touch her breast, performed oral sex on the victim, and made the victim perform oral sex on her." *See Jessica Jane M.,* 226 W.Va. at 248, 700 S.E.2d at 308. The victim's testimony

---

[7] When petitioner's counsel asked the aforestated question of the minor victim at trial, respondent's counsel objected. Respondent's objection was sustained.

3

was supported by testimony from her foster parent, a social worker/forensic interviewer, and a licensed psychologist. See *id*. at 248, 700 S.E.2d at 308. Accordingly, we find no error.

Petitioner next contends that her counsel was ineffective in failing to properly investigate and call the appropriate witness regarding the victim's pediatric care. At trial, petitioner's counsel called Dr. David Mossman as a witness. While Dr. Mossman was a doctor in the victim's pediatric office, he personally treated the victim on only one occasion for a sore throat. Because Dr. Mossman's treatment of the victim was so limited, petitioner alleges that he was not the appropriate witness to call at trial. Petitioner argues that her trial attorney's decision to call Dr. Mossman was objectively unreasonable and prejudiced petitioner in that it appeared as if petitioner had "no defense or, worse, that the doctor who did treat [the victim] regularly was not called to testify because there had been a concern raised."

Conversely, respondent argues, and we concur, that there was no error. Petitioner argues that the purpose of Dr. Mossman's testimony was to show that the victim had been treated by medical providers and that there was no evidence of sexual abuse identified during such treatment. Respondent argues that petitioner achieved this purpose. Here, Dr. Mossman testified that he reviewed the records from the other providers in his office who treated the victim at various times and that none of these records noted any indication of a suspicion of sexual abuse. Accordingly, petitioner's arguments of the deficiency of her trial counsel regarding Dr. Mossman are misplaced and we find no error.

Petitioner next alleges that she received ineffective assistance of counsel when her trial counsel displayed "outrageous, unprofessional behavior at trial." The alleged outrageous behavior related to her counsel's single question to the young victim regarding her sexual partners (which the victim did not answer) and a request counsel made to have petitioner's co-conspirator display his genitalia to the jury.[8] Petitioner argues that her counsel's behavior was "substantially below what a reasonable attorney would do under the circumstances of this case" and was tantamount to a "verbal attack" of a child, which caused the jury to not only dislike petitioner's counsel but also dislike petitioner and changed the outcome of the trial.

Respondent counters that petitioner's contention that her trial counsel's behavior at trial was outrageous and unprofessional falls "woefully short of substantiating an ineffective assistance of counsel claim." Based upon our review of the record, we agree with respondent. We find absolutely no merit to petitioner's contention that her counsel's request that petitioner's co-conspirator display his genitalia to the jury somehow influenced the verdict, as such request was presented to the court during an in camera conference, outside the presence of the jury. As to the questioning of the victim regarding her sexual partners, we note that even if this were deemed to be below the objective standard of reasonableness, we find, as noted *supra*, that this question levied by petitioner's counsel had little impact on the ultimate verdict, given the presence of other significant evidence against petitioner.

---

[8] The request for the display of genitalia was reportedly made by petitioner's counsel to establish that because petitioner's co-conspirator was endowed such that sexual intercourse with the child victim would have resulted in more injuries to the child than those described during trial.

Petitioner further argues that she received ineffective assistance when her trial counsel failed to file a motion for a new trial related to the testimony of Dr. Joan Phillips. At petitioner's trial, Dr. Phillips testified regarding her examination of the victim's hymen. Specifically, Dr. Phillips noted that the absence of the hymen in the 4 o'clock to 5 o'clock position was "considered clear evidence of a penetrating trauma" consistent with a "child that was held down and forcibly raped by an adult male." However, at the subsequent trial of petitioner's co-conspirator on December 15, 2009, Dr. Phillips testified that she noticed a "tiny piece of hymen" (at a different position) that she had not observed following her initial examination of the victim.[9]

Petitioner argues that her trial counsel was aware of Dr. Phillips's conflicting testimony, as her counsel made inquiry of the same in a letter to respondent's counsel dated June 16, 2010. Yet, petitioner's counsel never filed a motion for a new trial or otherwise advised petitioner to do so on her own. Petitioner alleges that these actions and inactions of her counsel constitute ineffective assistance of counsel.

Respondent disagrees and argues there was no error, as Dr. Phillips's testimony at both petitioner and her co-conspirator's trials was consistent and, accordingly, a new trial could not have resulted in a different outcome. In Syllabus, in part, of *State v. Frazier*, 162 W. Va. 935, 253 S.E.2d 534 (1979), this Court held that "[a] new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: . . . (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits." (Citation omitted.) Here, an opposite result at a second trial is unlikely and improbable.

Based upon our review of the record, we agree with respondent. The circuit court reviewed the testimony of Dr. Phillips at petitioner's trial and the trial of her co-conspirator and found that Dr. Phillips's testimony was consistent. At both trials, Dr. Phillips testified that at the 6 o'clock position, the victim's "hymen was transected and there was no evidence of hymen in that area[,]" which was consistent with penetrating trauma. Further, we note that even if a motion for new trial had been filed by petitioner's counsel on this issue, that, given the amount of other compelling evidence against petitioner, it would not have produced a different result at a second trial. Thus, in accordance with *Frazier*, we find no error in the circuit court's denial of petitioner's supplemental amended petition for a writ of habeas corpus due to the ineffective assistance of trial counsel for failure to file a motion for new trial.

In her second assignment of error, petitioner argues that the circuit court erred in permitting the introduction of "false evidence" by and through the conflicting testimony of Dr. Phillips. This Court has long held that

---

[9] Following petitioner's trial, and before the trial of her co-conspirator, the trial court directed Dr. Phillips to re-examine the victim and document the examination with photographs of the hymen. It was during the second examination that the miniscule presence of a hymen, "approximately 1/5 the size of a pencil eraser" was noted between the 7 o'clock and 9 o'clock positions. Dr. Phillips explained that this difference "could have been due to the fact that the child victim was more relaxed during" the second examination.

[w]here improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

Syl. Pt. 2, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979).

Petitioner argues that here, without the testimony of Dr. Phillips, the evidence against petitioner was insufficient. Respondent argues that Dr. Phillips's testimony was not false and that, even if such a determination were made, there was sufficient evidence to support the convictions returned against petitioner irrespective of Dr. Phillips's testimony. Based upon our review of the record and as detailed above, we agree. The record is replete with evidence, aside and apart from the testimony of Dr. Phillips, to provide a sufficient basis for petitioner's convictions. Accordingly, we find no error.

In her last assignment of error, petitioner argues that the circuit court erred in denying her motion to disqualify the prosecuting attorney's office from prosecuting the claims against her, as members of that office had previous contact with petitioner regarding prior claims of domestic violence perpetuated against her. Respondent argues, and we concur, that petitioner's arguments with respect to disqualification of the prosecuting attorney's office are not proper for consideration by this Court through the application of the doctrine of res judicata.

In her direct appeal, petitioner argued that the trial court erred in denying her motion to disqualify the prosecuting attorney's office. This Court found in *Jessica Jane M.* that petitioner failed to show that the prosecutor's office acquired any information from petitioner that was adverse to her interest in the underlying criminal case and found no error with the denial of her motion to disqualify the prosecuting attorney's office. *See Jessica Jane M.*, 226 W.Va. at 257, 700 S.E.2d at 317. In *Losh v. McKenzie*, 166 W. Va. 762, 765, 277 S.E.2d 606, 609 (1981), we held that

[f]requently habeas corpus petitioners seek collateral review of evidentiary or constitutional questions, such as the admissibility of a confession or failure to exclude physical evidence, when those issues were fully and fairly litigated during the trial and a record of the proceedings is available. In that event a court may apply rules of *res judicata* in habeas corpus because the issue has actually been fully litigated.

In Syllabus Point 1, in part, of *Bowman v. Leverette*, 169 W. Va. 589, 289 S.E.2d 435 (1982), we further held that West Virginia Code § 53-4A-1 "allows a petition for post-conviction habeas corpus relief to advance contentions or grounds which have been previously adjudicated only if those contentions or grounds are based upon subsequent court decision which impose new

6

substantive or procedural standards in criminal proceedings that are intended to be applied retroactively."

In the case sub judice, the circuit court did not abuse its discretion in refusing to disqualify the prosecuting attorney's office from prosecuting the State's claims against petitioner in the underlying criminal case. As this Court has addressed "the substantive nature of petitioner's claim" in her direct appeal, and found it to be without merit, we find no error.

Accordingly, the November 29, 2017, order of the Circuit Court of Ohio County denying and dismissing petitioner's supplemental amended petition for writ of habeas corpus is affirmed.

Affirmed.

**ISSUED:** June 7, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison